1
2
3
4
5
6
7
8                          **UNITED STATES DISTRICT COURT**
9
                           **CENTRAL DISTRICT OF CALIFORNIA**
10
                                    **WESTERN DIVISION**
11
   **JEREMY HOWELL,**                )
12                                    )
              **Plaintiff,**          )    **Case No. CV 16-388 AJW**
13                                    )
          v.                          )
14                                    )    **MEMORANDUM OF DECISION**
   **NANCY A. BERRYHILL,**            )
15 **Acting Commissioner of Social** )
   **Security,**                      )
16                                    )
              **Defendant.**          )
17 _____ )
18
       Plaintiff seeks reversal of the decision of defendant, the Acting Commissioner of Social Security (the
19
   "Commissioner"), denying plaintiff's applications for supplemental security income and disability insurance
20
   benefits. The parties have filed a Joint Stipulation ("JS") setting forth their respective contentions.
21
                                    **Administrative Proceedings**
22
       The procedural facts are undisputed and are summarized in the Joint Stipulation. [See JS 2]. On
23
   March 1, 2012, plaintiff filed his benefits applications alleging that he had been disabled since January 1,
24
   2009. [See Administrative Record ("AR") 11]. In a July 16, 2014 written hearing decision that constitutes
25
   the Commissioner's final decision in this matter, the Administrative Law Judge ("ALJ") found that plaintiff
26
   could not perform his past relevant work, but that he retained the residual functional capacity ("RFC") to
27
   perform alternative work available in significant numbers in the local and national economy. [AR 22-23].
28

Accordingly, the ALJ found plaintiff not disabled at any time from April 12, 2011 through the date of the ALJ's decision.[1] [AR 23].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Medical opinion evidence**

Plaintiff contends that the ALJ impermissibly rejected the controverted opinion of examining psychologist Lance Portnoff, Ph.D. [JS 3].

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick

---

[1] Plaintiff filed prior applications for disability insurance benefits and SSI benefits on April 11, 2011. Those applications were denied on reconsideration, and plaintiff did not timely appeal. Therefore, the ALJ applied res judicata and declined to reopen those applications or to reconsider the issue of plaintiff's disability through April 11, 2011. [AR 11]. Plaintiff does not challenge the application of res judicata and the decision not to reopen her prior applications, which is not subject to judicial review in any event. See Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995) (holding that the Commissioner properly applied res judicata to bar reconsideration of a period for which a prior, final determination had been made by declining to reopen the prior application); see also Udd v. Massanari, 245 F.3d 1096, 1098-1099 (9th Cir. 2001) ("A decision not to reopen a prior, final benefits decision is discretionary and ordinarily does not constitute a final decision; therefore, it is not subject to judicial review.") (citing Califano v. Saunders, 430 U.S. 99, 107-109 (1977)).

v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). An examining physician's opinion, in turn, generally is afforded more weight than a non-examining physician's opinion. Orn, 495 F.3d at 631; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester, 81 F.3d at 830-831. To reject an examining physician's opinion, the ALJ must give clear and convincing reasons. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298–1299 (9th Cir. 1999).

The opinion of a non-examining physician normally is entitled to less deference than that of an examining and treating physician precisely because the non-examining physician does not have the opportunity to conduct an independent examination and does not have a treatment relationship with the claimant. See Andrews v. Shalala, 53 F.3d 1035, 1040-1041 (9th Cir. 1995). Standing alone, the opinion of a non-examining physician cannot constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. Morgan, 169 F.3d at 602. However, a non-examining physician's opinion, if supported by the medical record as a whole, may constitute substantial evidence. Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); Tonapetyan, 242 F.3d at 1148 (explaining that the opinion of a non-examining medical expert may constitute substantial evidence when it is consistent with other independent evidence in the record).

The ALJ found that plaintiff had no severe physical impairments and severe mental impairments consisting of bipolar disorder, borderline intellectual functioning, and a history of substance abuse. [AR 13]. The ALJ determined that plaintiff retained the RFC to perform a full range of work at all exertional levels, but that he was limited to simple, routine tasks and occasional contact with the public and coworkers. [AR 16]. In assessing plaintiff's RFC, the ALJ said that he gave "substantial weight" to Dr. Portnoff's opinion, "greatest weight" to the opinion of consultative psychiatrist Elmo Lee, M.D., and "significant" weight to the opinions of the nonexamining state agency consultants, A. Franco, Psy. D., and Andres Kerns, Ph.D. [AR 17-19]. Plaintiff contends that the ALJ improperly rejected Dr. Portnoff's opinion.

3

On March 5, 2011, Dr. Portnoff performed a comprehensive psychological evaluation at the Commissioner's request. Dr. Portnoff elicited a history, conducted a mental status examination, and administered psychological tests to measure comprehension, processing speed, memory, and perceptual reasoning, among other things. [See AR 245-254]. Plaintiff "denied any history of substance abuse" but did report that he had been arrested for drug-related charges and had spent time in jail. [AR 246-247].

Dr. Portnoff diagnosed bipolar II disorder and cognitive disorder not otherwise specified ("NOS"). Dr. Portnoff opined that plaintiff had moderate limitations in the ability to perform detailed and complex tasks, accept instructions from supervisors, interact with coworkers and the public, complete a normal workday or workweek without interruptions from a psychiatric condition, and deal with the stress encountered in a competitive work environment. [AR 253-254]. Plaintiff was mildly impaired "in his ability to work on a consistent basis without special or additional instruction due to problems with concentration." [AR 254]. Dr. Portnoff concluded that plaintiff retained the ability to perform simple, repetitive tasks and to manage his own money. [AR 253-254].

On July 8, 2012, Dr. Lee conducted a comprehensive psychiatric examination at the Commissioner's request. Dr. Lee elicited a history and conducted a mental status examination. [AR 280-281]. Among other things, plaintiff reported that he had been participating in a dual-diagnosis residential sober-living program since February 2012. [AR 177-179]. Dr. Lee's diagnoses were alcohol abuse, cannabis abuse, substance induced mood disorder, and bipolar disorder by history. He opined that plaintiff's "psychiatric symptoms are directly related to his substance abuse history." [AR 281]. He stated that plaintiff was not capable of managing his funds as a result of "his significant substance abuse issues." [AR 281]. Dr. Lee opined that plaintiff could perform simple and repetitive tasks as well as detailed and complex tasks, and that plaintiff could work without special or additional instructions. Dr. Lee opined that plaintiff was not limited in the following work-related functional abilities and would remain so provided "he remains sober and continues with his current psychiatric treatment": accepting instructions from supervisors, interacting with coworkers and the public, maintaining regular attendance, and completing a normal workday and work week without interruption due to his psychiatric condition. [AR 281-282].

In his decision, the ALJ said that he credited both doctors' opinions, giving "substantial weight" to Dr. Portnoff's report and "greatest weight" to Dr. Lee's report. The ALJ said that he gave more weight to

Dr. Lee's findings "the record as a whole amply supports this opinion." [AR 20]. The ALJ concluded that Dr. Portnoff's opinion "is supportive of" Dr. Lee's opinion, and that Dr. Lee's report was entitled to the most weight because he examined plaintiff most recently and "had more of the medical evidence of record available to him." [AR 20].

While Dr. Lee examined plaintiff sixteen months after Dr. Portnoff, Dr. Lee said he had "only the list of allegations" from plaintiff's record, so the ALJ wrongly concluded that Dr. Lee's opinion was based on a more complete medical record. [AR 277]. Nonetheless, the ALJ reasonably concluded that Dr. Lee's opinion was supported by the record as a whole. The record does not include a treating source opinion regarding plaintiff's ability to perform work-related functional activities. Both Dr. Portnoff and Dr. Lee were one-time examining physicians who based their opinions on independent clinical findings. Although Dr. Lee did not administer psychological tests, he had the benefit of a more accurate and complete history, especially plaintiff's history of substance abuse, which Dr. Lee opined was "directly related" to plaintiff's psychiatric symptoms. That aspect of Dr. Lee's opinion is broadly consistent with Dr. Portnoff's observation that plaintiff's testing profile was "more than what would be expected from the neuropsychology of bipolar/depressive disorder alone," and that in the absence of a specific history of "an alcohol/drug encephalopathy" or learning disabilities, a diagnosis of generic cognitive disorder NOS was warranted. [AR 253].

Furthermore, Dr. Portnoff and Dr. Lee agreed that plaintiff could perform at least simple, repetitive tasks and had no more than mild limitations in his ability to work without special or additional instructions. While only Dr. Portnoff assessed the additional "moderate" functional limitations in accepting instructions from supervisors, interacting with coworkers and the public, completing a normal workday or work week without interruptions from a psychiatric condition, and dealing with the stress of a competitive work environment, the ALJ adequately captured some of those limitations by adopting the state agency medical consultants' opinion that plaintiff was limited to only occasional interaction with coworkers and the public. See Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1171 (9th Cir. 2008) (holding that a limitation to simple, routine, repetitive tasks with no interaction with the public adequately captured a physician's opinion that the claimant had moderate limitations in concentration, persistence, and pace); Rodriquez v. Colvin, 2015 WL 1237302, at *5 (E.D. Cal. Mar. 17, 2015) (stating that a "moderate limitations in the ability to complete

a normal workday and work week without interruptions from psychologically-based symptom do not preclude a finding of non-disability," and holding that the ALJ adequately captured such a moderate limitation in restricting the claimant to simple, repetitive tasks with no interaction with the general public and no work with or around children); McLain v. Astrue, 2011 WL 2174895, at *6 (C.D. Cal. June 3, 2011) ("Moderate mental functional limitations—specifically limitations in social functioning and adaptation—are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks.") (citing Rogers v. Comm'r of Soc. Sec., 2011 WL 445047, at *11–*12 (E.D. Cal. Jan. 25, 2011) (holding that a limitation to simple, repetitive tasks adequately accounted for moderate limitations in social functioning); Koehler v. Astrue, 283 Fed. Appx. 443, 445 (9th Cir. 2008) (holding that the ALJ's finding that the claimant did not have a "severe" mental impairment was proper even though claimant had "moderate" limitation in the "ability to respond to changes in the workplace setting")).

As for the remaining moderate functional limitations endorsed by Dr. Portnoff, the ALJ was entitled to resolve the conflict between the consultative examining source opinions by rejecting those limitations. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014) ("[W]e leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."); Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992). The opinions of the state agency medical consultants constituted substantial evidence supporting the ALJ's resolution of that conflict because those opinions were based a longitudinal review of the record as a whole, including the findings and conclusions of both consultative examiners and plaintiff's medical record. See Tonapetyan, 242 F.3d at 1148; Thomas, 278 F.3d at 957; Andrews, 53 F.3d at 104. [See AR 60, 62 (state agency medical consultant note stating that based on medical evidence in the record, plaintiff's "overall affective [symptoms] have remained controlled and stable by meds; [claimant] has been consistent and compliant with [treatment]; positive response to meds; [clean & sober;] given his overall [borderline intellectual functioning]: capable of simple rep[etitve] work; suggest limited public contact; can otherwise interact and adapt accordingly."); AR 107-110 (adopting the initial state agency mental RFC assessment on reconsideration, and explaining that: (1) plaintiff alleged new anxiety attack symptoms and paranoia but was unsure when those symptoms began; (2) named a treating source for that issue, but that doctor indicated that plaintiff was not his patient; and (3) updated medical evidence in the record indicated "ongoing substance abuse treatment compliance issues,

no discussion of anxiety.")]. The ALJ also pointed to treatment reports from July 2013 through April 2014 that buttressed Dr. Lee's opinion that plaintiff could "function relatively well when sober and compliant, and not so well when he is abusing substances and/or not complying with advice and prescription of treating sources." [AR 21; see AR 351-378].

Plaintiff's contention that the ALJ improperly disregarded or gave too little weight to Global Assessment of Function ("GAF") scores lacks merit. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014). "GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability," but "they may be a useful measurement." Garrison, 759 F.3d at 1003 n.4.

As plaintiff notes, Dr. Portnoff gave plaintiff a GAF score of 58, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning. Dr. Lee, on the other hand, gave plaintiff a GAF score of 65, indicating mild symptoms or mild functional difficulties. The ALJ did not err in failing to mention Dr. Portnoff's GAF score because he discussed Dr. Portnoff's narrative opinion, including the moderate mental functional limitations Dr. Portnoff assessed. For the reasons described above, the ALJ permissibly adopted some, but not all, of those limitations, so a separate discussion of the GAF score was not required and would not have been useful. Other providers gave plaintiff GAF scores between 50 and 60, with one assigning a GAF score of 48. As plaintiff notes, however, those "GAF scores were not accompanied by an analysis" or by any medical opinion regarding plaintiff's ability to work, so the ALJ did not err in failing to discuss those scores. [JS 6-8; see AR 254, 271, 290, 353, 362, 366, 368, 370].

For all of these reasons, the ALJ did not err in evaluating the medical opinion evidence.

**Plaintiff's subjective testimony**

Plaintiff contends that the ALJ erred in evaluating the credibility of his subjective symptoms. [JS 3].

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the pain or other subjective symptoms alleged, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also C.F.R.

§§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Treichler, 775 F.3d at 1102; Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008). "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (same). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ partially credited plaintiff's subjective allegations about his depression, anxiety, and social difficulties by restricting him to simple, routine tasks with occasional contact with the public and coworkers.[2] The ALJ reasonably rejected the alleged severity of plaintiff's subjective testimony that he had disabling depression and anxiety, did not have friends or family who wanted to spend time with him, disliked people, had problems with neighbors, was paranoid, and avoided crowds. [See AR 17]. The ALJ cited testimony and documentary evidence that plaintiff lived with his girlfriend of ten years and their daughter; had an intact relationship with his father; was able to live in a sober-living facility for two years, where he attended all required group meetings and successfully completed a rehabilitation program; and performed a range of daily activities, which included obtaining a low-income apartment and other public benefits for himself and his family; obtaining a bus pass and using public transportation alone; attending group meetings and therapy after completion of his residential program; caring for his personal needs, albeit with the need for reminders at times; preparing simple meals; performing some household chores; watching television; grocery shopping two or three times a week; handling bills and bank accounts; and going for

---

[2] Plaintiff does not dispute the ALJ's summary of plaintiff's subjective testimony. [See JS 2; AR 17].

walks. [See AR 17-22]. Even though those activities may not be transferrable to a work setting, the ALJ reasonably concluded that they undermine the allegedly incapacitating severity of plaintiff's subjective mental symptoms. See Molina v. Astrue, 674 F.3d 1104, 1112-1113 (9th Cir. 2012) (stating that even when a claimant's daily activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment").

In addition, the ALJ remarked that no treating source opined that plaintiff was disabled or assessed functional limitations, while Dr. Lee and the state agency medical consultants opined that plaintiff could work. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (stating that the ALJ may consider information from physicians regarding the nature and effect of a claimant's symptoms). The ALJ also was entitled to consider Dr. Lee's opinion and plaintiff's treatment records indicating that plaintiff' sobriety and medication compliance greatly affected the severity of plaintiff's subjective symptoms. Treatment reports indicated that plaintiff was stable and functioning with minimal symptoms when sober and compliant, and that going off his medications caused an exacerbation of symptoms. [See AR 20-21, 351-378].

The ALJ also was entitled to rely in part on inconsistent statements plaintiff made about the nature and extent of his alcohol and drug use. The ALJ pointed to several such statements, not merely one as plaintiff contends. [See AR 21-22]. The fact that plaintiff may have fully disclosed his substance abuse history in some situations does not obviate the significance of inconsistencies, which undermine plaintiff's reliability overall. See Thomas, 278 F.3d at 958 (holding that the ALJ's finding that plaintiff had not "been a reliable historian, presenting conflicting information about her drug and alcohol usage" was a specific, clear, and convincing reason for his negative credibility determination where the claimant denied any substance abuse to one provider and admitted substance use to others, but with conflicting details); Verduzco, 188 F.3d at 1089 (holding that the ALJ properly discounted the claimant's testimony in part because "[his] testimony and various statements regarding his drinking were not consistent"); see generally Molina, 674 F.3d at 1112-1113 (stating that the ALJ may use "ordinary techniques of credibility evaluation" and may consider "inconsistencies . . . in the claimant's testimony").

The ALJ articulated clear and convincing reasons, supported by substantial evidence in the record, for his partial rejection of plaintiff's subjective complaints.

**Lay witness testimony**

Plaintiff contends that the ALJ did not adequately support his decision to give little weight to the third-party function report prepared by Heather Hopmans, plaintiff's live-in girlfriend and the mother of one of his children. [AR 208-216].

"[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993) (holding that the ALJ erred in disregarding descriptions of the claimant's symptoms and functioning from lay witnesses who "clearly saw [the claimant] on a frequent basis"). While an ALJ must take into account competent lay testimony about a claimant's symptoms and functional impairments, the ALJ may discount that testimony by providing "reasons that are germane to each witness." Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)(quoting Dodrill, 12 F.3d at 919). Germane reasons for rejecting a lay witness's testimony include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment. See Carmickle, 533 F.3d at 1164; Greger, 464 F.3d at 971; Bayliss, 427 F.3d at 1218. However, ALJs must "tie the reasoning of their credibility determinations to the particular witnesses whose testimony they reject." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

The ALJ said that he gave "little weight" to Ms. Hopmans's lay testimony because her status as his live-in girlfriend and the mother of his child gave her a financial interest in helping plaintiff obtain benefits, and because her statements "essentially are the same" as plaintiff's subjective allegations, which the ALJ discredited. [AR 19].

The ALJ erred in rejecting Ms. Hopmans's lay testimony because she was plaintiff's girlfriend and lived with him. "[T]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant everyday is of particular value; such lay witnesses will often be family members." Regennitter, 166 F.3d at 1298 (brackets and ellipsis omitted). Additionally, a claimant's financial motivation for obtaining benefits is not a valid reason for discrediting the testimony of the claimant or the claimant's family members. See Ratto v. Sec'y, Dep't of Health & Human Servs., 839 F. Supp. 1415, 1428-1429 (D. Or. 1993) ("By definition, every claimant who applies for [disability] benefits does so with the knowledge—and intent—of pecuniary gain. That is the very purpose of applying for [disability] benefits. . . . . If the desire or expectation of obtaining benefits

were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, or family) would ever be found credible.").

The ALJ's error was harmless, however, because he articulated a second, germane reason for not finding Ms. Hopmans' fully credible, namely, the similarity between her statements in the function report and plaintiff's subjective allegations. See Burch, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless.").

The statements made by plaintiff's girlfriend in her function report were similar to plaintiff's description of his subjective symptoms. Plaintiff was living in the sober-living facility at the time the reports were completed. [AR 208, 216]. Ms. Hopmans said that she saw plaintiff daily for meals and for walks. [AR 208]. Both Ms. Hopmans and plaintiff said that he exhibits a lot of anxiety and a sense of impending doom. [AR 209, 214, 222]. Ms. Hopmans said that plaintiff "loses patience quickly" while preparing a meal, while plaintiff wrote he "just gets frustrated" when he makes food for himself. [AR 210, 218]. Ms. Hopmans described plaintiff as "often irritable and very impatient" when dealing with other people. [AR 213]. She asserted that plaintiff "needs things to be explained in detail, more than once. [He] can't concentrate easily, is impatient with most people." [AR 213]. She added that he had past problems getting along with coworkers and had trouble handling stress. [AR 214]. Plaintiff said that he did not "like people and they make me paranoid. . . . I can't always get along with others . . . ." [AR 221]. He also said that he did not handle stress well. [AR 222]. Ms. Hopmans and plaintiff described his activities of daily living as including attending group meetings, counseling, and appointments; going on walks; making meals a few days a week; washing dishes; going outside daily; food shopping one to three times weekly; paying bills, using a check book, and handling a bank account; watching television daily; and spending time with others on a daily basis talking and smoking cigarettes. [AR 208-223].

In limiting plaintiff to simple, routine work with only occasional contact with the public and coworkers, the ALJ gave some weight to the testimony from plaintiff and his girlfriend regarding his difficulty in social functioning and his problems with impatience, frustration, and difficulty understanding, concentrating on, and completing tasks. As the ALJ noted, however, plaintiff's subjective complaints of disabling social difficulties was undermined by his ability to live in a dual-diagnosis sober-living facility for two years, successfully complete that residential program, and attend twelve-step group meetings and

11

therapy during and after completing that two-year program. Plaintiff's ability to perform a variety of daily activities, the absence from the record of any treating source disability opinion, and the opinions of Dr. Lee and the state agency medical consultants, including the evidence on which they relied, all tended to undermine the credibility of the testimony from plaintiff and Ms. Hopmans.

Since the ALJ articulated a germane reason for not fully crediting plaintiff's girlfriend's lay witness testimony, any error resulting from his reliance on a second, defective reason was harmless.

## Conclusion

For the reasons stated above, the Commissioner's decision is based on substantial evidence and is free of reversible legal error. Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

May 5, 2017

_____
ANDREW J. WISTRICH
United States Magistrate Judge